IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT CRAFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ROBERT BURNS (JACKSON CNTY. SHERIFF), | ) |
| DALE FOSTER (UNION CNTY. SHERIFF), | ) Case No. 22-cv-119-DWD |
| LEE KERSTEN, | ) |
| KYLE SPRADLING, | ) |
| CENTERSTONE, | ) |
| KATIE MILEY, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on Motions to Dismiss filed by Defendants Dale Foster (Doc. 29), Katie Miley (Doc. 31), and Centerstone (Doc. 34). The underlying lawsuit contains claims about Plaintiff Robert Craft's confinement at the Jackson County Jail, brought under 42 U.S.C. § 1983, and the Americans with Disabilities Act, 42 U.S.C. §12001, et seq.. (Doc. 1). Plaintiff has responded to all three motions to dismiss, so the motions are now ripe for review. For reasons explained, Defendant Foster's motion will be granted, Defendant Miley's motion will be denied, and Centerstone's motion will be granted.

## THE COMPLAINT

Plaintiff alleges that on January 12, 2021, the Union County States Attorney filed a criminal complaint against him, and on the same day he was admitted to the Jackson County Jail (Jail). The Jail houses detainees for Union County by agreement. Prior to his admission to the Jail, the arresting officer and the criminal court were informed of Plaintiff's serious mental health needs, and the court instructed Plaintiff's public defender and the state's attorney to ensure that Plaintiff received needed mental health treatment. (Doc. 1 at ¶ 16). In his complaint, Plaintiff alleged that his "mental illness was known to Defendants from day one," based on the allegations that he informed various officials involved in his arrest.

Upon admission to the Jail, Plaintiff was placed on suicide watch in a small isolation cell. Plaintiff engaged in self-harm, which included biting his wrists until they bled. (Doc. 1 at ¶17). Plaintiff was on suicide watch at least 3 additional times. (*Id*. at ¶ 18). Plaintiff alleges that although he put in "several requests" for mental health counseling, he was only seen by crisis counselors from Centerstone when he threatened suicide. (*Id*. at ¶ 24).

Plaintiff alleges that the Jail failed to provide adequate mental health treatment for his conditions. He claims the Jail's mental healthcare "fails at the door," because he did not receive an appropriate initial mental health evaluation, nor did the facility create a mental health treatment plan for him. (Doc. 1 at ¶¶ 19-20). He alleges that he saw Defendant Katie Miley every six to eight weeks for only five to ten minutes at a time, to renew his medications. (*Id*. at ¶ 22). Miley did not give him information about his

medications. Despite medications, Plaintiff continued to experience problems, including sleeping 15 hours a day, and crying when awake.

Plaintiff alleges that he spent more than a year in solitary confinement, with few opportunities for activities or socialization. As a result, he became anxious, and his relationships with family suffered.

Plaintiff uses a CPAP machine at night. To accommodate for his CPAP machine, Plaintiff was housed in the booking area of the jail for ten months. (Doc. 1 at ¶ 28). In the booking area he could not access necessities such as toilet paper, towels, showers, television, or recreation. (*Id.* at ¶ 29).

In relation to the factual allegations, Plaintiff identified three enumerated claims. Claim One is brought under the Fourteenth Amendment against "all Defendants" for inadequate mental health treatment. Plaintiff alleges with this claim that the Jail "has a policy or custom of failing to provide appropriate mental health screening, evaluation, and treatment planning which has resulted in the failure to provide [him] with adequate mental health care." (Doc. 1 at ¶ 36). Plaintiff further alleges that Centerstone's "policies and/or customs fail to provide appropriate mental health screening, evaluation, treatment planning, and mental health evaluations." (*Id.* at ¶ 37). Plaintiff alleges that the lack of an initial evaluation, the lack of a treatment plan, and the lack of appropriate treatment and interventions during suicide watch all violated his Fourteenth Amendment rights. (*Id.* at 39).

In Claim Two, Plaintiff alleges that his Fourteenth Amendment rights were violated by unlawful conditions of confinement by "all Defendants" because he was

housed in prolonged isolation.  Claim Three alleges violations of the ADA against the Sheriff of the Jackson County Jail—Defendant Burns.

## DISCUSSION
A. Legal Standards

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to decide the adequacy of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The

purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson,* 910 F.2d at 1520. A complaint "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sanders v. Melvin,* 25 F.4th 475, 483 (7th Cir. 2022) (internal quotations and citations omitted). When reviewing a Rule 12(b)(6) motion to dismiss, the court is generally limited to the allegations within the four corners of the complaint, along with any exhibits attached to the complaint and any documents attached to the motion that are referenced in and central to plaintiff's claims. *See, e.g., Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012).

A § 1983 claim that a state pretrial detainee has received inadequate medical care is predicated on the rights secured by the Fourteenth Amendment's Due Process Clause. *See, e.g., Miranda v. County of Lake,* 900 F.3d 335, 346-47 (7th Cir. 2018). To establish inadequate medical care, a pretrial detainee,

> […] bears the burden to demonstrate objective unreasonableness, and he must make a twofold showing. First, he must show that the defendant acted purposefully, knowingly, or recklessly when considering the consequences of his response to the medical condition at issue in the case. Second, the plaintiff must show that the challenged conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances.

*James v. Hale,* 959 F.3d 307, 318 (7th Cir. 2020). Some panels of the Seventh Circuit use a four-part test, rather than the two-part test quoted above. Those panels require a plaintiff to show:

> (1) that there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the decedent's medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the decedent's medical need; and (4) the defendant acts

"purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm.

*Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 828 (7th Cir. 2022).

B. Analysis

**Defendant Foster's Motion to Dismiss (Doc. 29)**

Defendant Foster argues that he is entitled to dismissal because Plaintiff failed to adequately describe his personal involvement or knowledge of unconstitutional conditions for purposes of a § 1983 claim in Claims One or Two.  As to any official capacity claim, Foster argues that such claims should be dismissed because it is not reasonable to infer that Foster acted pursuant to a custom or policy on the allegations presented.  Finally, Foster argues that he should not be subject to Claim Three concerning the ADA because there are no allegations connecting him to this claim, and the ADA does not allow individual liability.

As to the individual capacity claims, Plaintiff argues that Claim One against Foster under the Fourteenth Amendment for inadequate mental health care is sufficient because as a Sheriff, Foster is presumed to have knowledge of and involvement in jail conditions that are systematically flawed. Plaintiff argues that the jail systematically fails to adequately screen, evaluate, or plan treatment for detainees' mental illnesses.  As to the conditions of confinement in Claim Two, Plaintiff argues that the jail systematically keeps inmates in isolation nearly 24 hours a day, every day.  Plaintiff alleges that the Jail was sued earlier in 2021 concerning inadequate mental health care and isolation—*Thomas v.*

*Burns,* 21-cv-187-JPG (S.D. Ill. 2021).[1] Plaintiff argues that the existence of the *Thomas* case put jail officials on notice of systematic deficiencies. Plaintiff further argues that Foster had a duty to know about the conditions at the Jail, and his knowledge can be inferred from the facts pled.

As to the official capacity claims, Plaintiff argues that there are two policies in question: the express policy of Union County to house its detainees at the Jail, and the policy or practice of the Jail for failing to provide mental health care. Plaintiff claims that ultimately he will have to show that Union County policy makers were aware of the risks present at the Jail and chose to house detainees there despite the risks. He will also have to show that the policymakers knew about the inadequacy of mental health care at the jail.

Plaintiff indicates that Claim Three of the complaint, concerning the ADA, was not pled against Foster.

As Foster correctly states, Section 1983 liability is premised on personal involvement. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (lawsuits against individuals require personal involvement in the constitutional deprivation to state a claim). Considering both the mental health treatment and the conditions of isolated confinement at the Jail, Plaintiff has failed to allege adequate personal involvement of Foster in these issues. For example, Plaintiff alleges that a Union County judge, a state's attorney, his public defender, and an arresting officer were made aware of his mental

---

[1] The Court notes that the *Thompson* case appears to have been brought by a Jackson County detainee at the Jail, so it is not clear that this lawsuit would have imputed any knowledge to Foster, the Sheriff of Union County.

health needs, but he does not make any mention of this information being relayed to Foster before he was detained. Additionally, he does not allege that Foster was made aware of his placement in isolation either immediately or throughout the duration of his confinement. Without any allegations that directly attribute personal knowledge or decision making to Foster about Plaintiff's medical needs or the conditions of his confinement, the complaint is insufficient to maintain personal capacity claims against Foster. These defects are similar to those found by the Seventh Circuit in *Gonzalez v. McHenry*, 40 F.4th at 828, where the Court found that claims against a Sheriff in his individual capacity were properly dismissed because the plaintiff did not allege that the sheriff specifically knew about his detention or made any decisions specific to the conditions of his detention. A prison warden, or in this case a sheriff, are entitled to relegate the management of medical issues to medical staff. *See Gevas v. Mitchell*, 492 Fed. App'x 654, 660 (7th Cir. 2012) (personal involvement limited to the handling of grievances is typically not enough to establish personal involvement of a warden with a medical care issue).

Plaintiff cites multiple cases that set a different standard for individual liability if there are allegations of systematic failures at a facility such that any sheriff would know of the situation.[2] Whatever viability a systemic failure theory might have, Plaintiff's

---

[2] The cases cited describe systemic failures about conditions such as pest infestations, inadequate sanitation (plumbing and showers), inadequate heat, etc. *See e.g., Brown v. Dart*, 2017 WL 3219217 (N.D. Ill. 2017) (collecting cases on systemic failures). The Court finds that these cases are not particularly instructive because the systemic failures described relate to widespread physical conditions of a facility, rather than widespread failures in services provided. Unlike a pest infestation that would impact every pretrial detainee similarly, Plaintiff complains of the systemic handling of medical care and isolated housing. Each issue is unique to him. *See Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) (unpublished slip opinion accompanying published decision) ("Sanders' claims regarding nutritionally deficient food and inadequate

complaint does not clearly and explicitly outline a systemic failure, so the complaint is not sufficient to put Foster on notice of such a claim. Claim One is generically presented against all defendants. Although there are legal allegations targeted against individual defendants, the Jackson County Jail's policy, and Centerstone's policy, these legal allegations do not clearly tie Foster to knowledge of a systemic problem at the jail, so these legal allegations combined with the factual allegations are insufficient to state a claim against Foster in his individual capacity. It is important to note that Foster is Sheriff of Union County, not Jackson County, so it is less obvious how he would be aware of any systematic problems that may arise.

Claim Two is presented in the same fashion against "all Defendants" for the conditions of prolonged isolation at the Jail. There are no factual allegations that tie Foster to this claim based a systematic problem, so he cannot be liable under a theory of individual liability. With Claim Two—the Court notes that Plaintiff was apparently housed in isolation in the booking area of the Jail for a significant period of time because he needed an electrical outlet for his CPAP machine. This unique need suggests that Plaintiff's placement in an isolated cell was specific to him, rather than that it was a

---

hygiene are conceivably systematic conditions that can support a valid claim against [a sheriff and director] in their personal capacity. However, because Sanders' allegations regarding health, ventilation, and noise are confined to conditions in his particular dormitory, they do not support such a claim. Similarly, Sanders' claim of insufficient psychological treatment also reflects a localized, non-systemic violation[.]"). Although many pretrial detainees may suffer some kind of mental health need, it is not sufficiently clear that the needs are the same as Plaintiff's. As for isolation, although the impacts of isolation on any inmate might be broadly understood, Plaintiff was apparently kept in an isolated booking cell for quite a while because he needed an electrical outlet for his CPAP machine. This unique need suggests his housing situation might have been localized to him rather than systemic. The Court does not find that a theory of a systemic problem is impossible to establish, but the facts alleged do not clearly establish a theory of this nature.

systemic failure at the jail that was so widespread the sheriff of another county would know about it.

As to official capacity claims against Foster for either Claim One or Claim Two, there are not sufficiently clear allegations to tie Foster to any specific policies or customs, such that he should be considered an express policy maker for official liability purposes. It is interesting to note, as discussed in *Gonzalez*, that an official can only be said to set a policy if he possesses the authority to adopt a rule prescribing conduct on the matter. 40 F.4th at 829. The *Gonzalez* Court goes on to note that courts, not sheriffs, make pretrial detention decisions, so a theory that a jail has a policy of accepting anyone regardless of their medical needs is not a policy at all because sheriffs do not make the decision to detainee people. Under a similar rationale, Plaintiff's theory that mental healthcare "fails at the door" is also inadequate, because there is no suggestion that Foster had any say in Plaintiff's confinement. Confinement is a court determination, not a discretionary matter of policy for a sheriff. Based on the above analysis, Foster's Motion to Dismiss (Doc. 29) will be granted in the entirety.

**Defendant Miley**

Defendant Miley argues that she is entitled to dismissal of Claim One—the deliberate indifference claim—against her because the allegations against her represent 'classic examples' of routine medical judgment, which do not amount to deliberate indifference. (Docs. 31, 32). Specifically, she argues that the only factual allegations directed at her were the allegation that every 6-8 weeks she saw Plaintiff for 5-10 minutes to renew his medications, but during those visits she did not give information about the

medications, nor did she address his concerns that the medications were ineffective. She also provides arguments about Claims Two and Three, but Plaintiff stated that these claims were not directed at Miley. (Doc. 36).

Unlike Defendant Foster, whose personal involvement was unclear, Defendant Miley clearly had an opportunity to interact with and treat Plaintiff. It would be premature at the Motion to Dismiss stage to say that Miley's care was or was not within reasonable standards, and that she did or did not exhibit deliberate indifference, because it is obvious that there is disagreement about these issues. Additionally, the Court notes that Miley cites to the incorrect standard for an inadequate medical care claim brought by a pretrial detainee. Miley indicates that the standard is "the same 'deliberate indifference' standard of the Eighth Amendment," (Doc. 32 at 2), but this is inaccurate. The standard for pretrial detainee claims requires an objective reasonableness analysis, rather than the subjective reasonableness analysis used for the Eighth Amendment claims. *See Miranda v. County of Lake,* 900 F.3d 335, 352 (7th Cir. 2018) (adopting the objective reasonableness standard for pretrial detainees claims about the adequacy of medical care). Accordingly, Miley's Motion to Dismiss (Doc. 31) will be denied.

**Defendant Centerstone**

Defendant Centerstone argues that Plaintiff's complaint does not identify an express policy or custom possessed by Centerstone that caused harm. (Doc. 34). At most, Centerstone claims that Plaintiff alleged that he saw Centerstone counselors only when he was experiencing a mental health crisis, and that he saw counselors on a handful of occasions. Centerstone alleges that these allegations are not enough to make out a policy

or practice claim, so Claims One and Two against Centerstone should be dismissed. Centerstone also argues that Claim Three should be dismissed because it does not expressly mention Centerstone.

In response, Plaintiff states that Centerstone is only named in association with Claim One—for failure to provide adequate mental health treatment. Plaintiff argues that because the Jail has delegated at least some authority to Centerstone to provide mental health treatment, then it is plausible that his complaint states a valid claim against Centerstone for its role in the provision of mental health services. Plaintiff alleges that without further discovery, it is impossible to know the exact parameters of Centerstone's liability, or its involvement in any aspect of the Jail's mental health system.

A government entity or corporate contractor cannot be held liable under a theory of *respondeat superior* liability, municipal liability exists only when execution of an entity's policy or custom causes the injury in question. *See e.g.*, *Monell v. Dep't of Soc. Servs. Of the City of New York*, 436 U.S. 658, 694 (1978). There are three major theories of *Monell* liability: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a 'widespread practice' that although no authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) a deliberate act from an employee with official policy-making authority. *See e.g. Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Plaintiff does not identify an express policy, so he must rely on either a widespread practice or a deliberate act by an employee policy-making authority. Plaintiff's specific legal allegation against Centerstone in Claim One of the complaint is that,

"Centerstone's policies and/or customs fail to provide appropriate mental health screening, evaluation, treatment planning, and mental health interventions, which has resulted in the failure to provide [Plaintiff] with adequate mental health care." (Doc. 1 ¶ 37). This allegation is threadbare—it amounts to almost no more than a bare unadorned legal allegation. Plaintiff cites a few cases in support of his policy or practice claim, but in those cases, the plaintiffs frequently made it known to the alleged policymakers that they had conditions that were untreated, and they had many examples of missed or severely delayed treatment. *See Neely v. Randle*, 2013 WL 3321451 (N.D. Ill. 2013) (numerous requests made for treatment via grievance procedure for dental issue at multiple facilities to no avail); *Ford v. Wexford Health Sources, Inc.*, 2013 WL 474494 (N.D. Ill. 2013) (numerous nearly daily requests made for care for serious back injury, followed by delays in care even after ordered by doctor); *Quinn v. Hardy*, 2013 WL 4836262 (N.D. Ill. 2013) (numerous grievances, in addition to hunger strikes and suicide attempts made to get care, as well as repeated correspondence to Wexford).

Plaintiff's own allegations are more generic and sparse than the cases he points to in support of the proposition that he has stated a sufficient claim. Notably, Plaintiff only entered the Jail one time, so there was only one opportunity for an intake screening, and he only alleges that he made 'several requests' for mental health care. He does not indicate if he raised complaints about either of these issues in a fashion intended to make Centerstone aware of deficiencies in care. Although the Court understands that discovery can be critical to develop the factual underpinnings of claims, Plaintiff's allegations against Centerstone concerning a policy or practice are just too sparse at this

juncture to constitute a plausible claim. Centerstone's Motion to Dismiss (Doc. 34) will be granted.

## DISPOSITION

In summary, Defendant Foster's Motion to Dismiss (Doc. 29) will be **GRANTED**, because Plaintiff has failed to plead a sufficient claim against Foster in Claims One or Two. Defendant Miley's Motion to Dismiss (Doc. 31) will be **DENIED**, because Plaintiff has identified a sufficient claim against Miley in Claim One. Defendant Centerstone's Motion to Dismiss (Doc. 34) will be **GRANTED** because Plaintiff has not identified a sufficient policy or practice held by Centerstone that amounted to a violation of his rights. The dismissals for Foster and Centerstone are without prejudice.

**IT IS SO ORDERED.**

Dated: October 5, 2022

DAVID W. DUGAN
United States District Judge