IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| ROBERT CRAFT, ) | |
| ) | |
| Plaintiff, ) | Judge David W. Dugan |
| ) | Case No. 22-CV-119-DWD |
| v. ) | |
| ) | JURY TRIAL DEMAND |
| SHERIFF, ROBERT BURNS, ) | |
| ) | |
| Defendant. ) | |

AMENDED COMPLAINT

Plaintiff, Robert Craft, complains as follows:

1. Robert Craft is a veteran with serious mental illness, including Post Traumatic Stress Disorder (PTSD) and major depressive disorder.

2. On January 12, 2021, the Union County States Attorney filed a criminal complaint against Mr. Craft, and Mr. Craft was admitted to the Jackson County Jail as a pre-trial detainee. He has remained in solitary confinement at the Jackson County Jail for nearly a year, without access to adequate mental health treatment for his serious mental illness.

3. Mr. Craft also has sleep apnea, which requires the use of a CPAP machine at night. For 10 of the last 12 months, Mr. Craft was housed in the "booking" area of the jail purportedly because of his need for an electrical outlet to plug in his CPAP machine. The booking area is intended to be a short-term placement and does not have access to the same programs and services that are available in other parts of the jail intended for long-term confinement, including access to toilet paper, towels, a television, and regular showers.

JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28.U.S.C Sections 1331 and 1343(3) and (4).  The matters in controversy arise under 42 U.S.C Section 1983.

5.      Venue properly lies in this District pursuant to 28 U.S.C Section 1391 (b)(2). Because the events giving rise to this cause of action occurred at Jackson County Jail in the City of Murphysboro, which is located within the Southern District of State.

PARTIES

6.      Defendant Robert Burns is Sheriff of Jackson County, Illinois, with responsibility for the Jackson County Jail located at 1001 Mulberry Street, Murphysboro, Illinois. He is sued in his individual and official capacities.

7.      Defendant Lee Kersten was, at all times relevant hereto, an employee of the Jackson County Sheriff's Office working as a lieutenant at the Jackson County Jail. He is sued in his individual capacity.

8.      Defendant Kyle Spradling was, at all times relevant hereto, an employee and lieutenant of the Jackson County Jail. He is sued in his individual capacity.

9.      Defendant Sharee Langenstein is an Assistant States' Attorney for Jackson County. She is sued in her individual capacity.

10.     Defendant Scott Harvel was the Sheriff of Union County from 2014 until August 2, 2021, when he retired. He is sued in his individual capacity.

11.     Defendant Dale Foster replaced Scott Harvel as Sheriff of Union County after Defendant Harvel's retirement and is currently the Sheriff of Union County. He is sued in his individual and official capacities.

12.     Defendant Tyler Tripp is the States' Attorney for Union County. He is sued in his

individual capacity.

13. Katie Miley is an advance practice nurse employed by Vadim Baram, Inc.. At all times relevant to this case, Vadim Baram, Inc. contracted with Union County and Jackson County to provide psychiatric care to pretrial detainees housed at the Jackson County Jail.

FACTUAL ALLEGATIONS

14. Robert Craft suffers from Post-Traumatic Stress Disorder and major depressive disorder, which are serious mental illnesses.

15. Mr. Craft is a veteran of the U.S. Military. He served in the airborne infantry for nearly eight years. He spent 15 months in Iraq and 8 months in Afghanistan.

16. Mr. Craft was diagnosed with PTSD in 2013, after his discharge from military service.

17. Prior to his arrest, Mr. Craft was receiving mental health treatment through the Department of Veterans' Affairs (VA). Mr. Craft was supposed to have a counseling session on January 12, 2021—the day he was arrested. He was also scheduled for a psychiatric appointment on January 26th, 2021. The VA was working on setting Mr. Craft up with a psychologist for regular counseling and had planned for him to have a blood draw to evaluate whether his mental health concerns were related to issues with his thyroid.

18. Both the arresting officer and the criminal court were informed of Mr. Craft's serious mental health needs. The judge instructed Mr. Craft's assigned public defender and the states attorney, Tyler Tripp, to ensure that Mr. Craft would receive his needed mental health treatment.

19. Once admitted to Jackson County Jail in January 2021, Mr. Craft was immediately placed on suicide watch. Mr. Craft was stripped of his clothing and dressed in a

small smock, shut into a small room about 6 feet by 12 feet, with no bunk or bed and only a mat on the floor for sleeping, with a light that would not turn off. He was not provided with a counselor to talk with or anything to do to occupy his mind. As a result of these torturous conditions, he began to hallucinate and bite his own wrists, drawing blood which he then used to write notes. Mr. Craft remained there for 35 days.

20. Upon his arrest, Robert Craft became a detainee of Union County and therefore in the custody of the Union County Sheriff. Union County does not have a jail of its own, however, and contracts with Jackson County to house Union County's detainees in the Jackson County Jail ("the Jail").

21. The contract between Jackson and Union County specifically states that Union County remains responsible for providing mental health treatment to detainees in its custody who are housed in the Jail. Paragraph 3 of the contract in effect at the time of Mr. Craft's incarceration reads, "Union County at all times shall remain liable for its prisoners'/arrestees' medical, dental, mental and vision obligations and expenses as set forth in the County Jail Act (724 ILCS 125/1 et seq.) and other applicable provisions of the law."

22. Under the Counties' contract, Jackson County retained the responsibility to notify the Union County Sheriff's Office any time it was anticipated that any of Union County's detainees medical, dental, mental or vision expenses or procedures might exceed $1000.

23. The Union County States Attorney, Tyler Tripp, knew that Mr. Craft required mental health treatment from the time he entered the Union County Sheriff's custody. In fact, Defendant Tripp argued to the Union County criminal court at Mr. Craft's bond hearing two weeks after his arrest (while Mr. Craft was still on suicide watch) that Mr. Craft's mental health instability was a reason to keep him incarcerated in the Jackson County Jail, rather than releasing

him on bail. Yet releasing Mr. Craft on bail pending trial would have enabled Mr. Craft to continue obtaining needed mental health services through the Department of Veterans' Affairs. Given his representations to the criminal court that Mr. Craft would be provided the mental health services he needed at the Jackson County Jail, Defendant Tripp had an obligation to inform the Union County and Jackson County Sheriffs that Mr. Craft required mental health treatment and to follow-up to make sure those services actually were provided.

24. The Jackson County Defendants—Defendant Kersten, Spradling, and Burns—all knew that Mr. Craft required mental health treatment, as early as Plaintiff's booking into the jail and placement on suicide watch and had a responsibility for notifying the Union County Sheriff that Mr. Craft required mental health services.

25. Moreover, Defendants Burns and Kersten were policymakers at the jail who were ultimately responsible for ensuring that the Jackson County Jail had policies and procedures in place to identify patients with serious mental health needs, to notify Union County if any of Union County's detainees required mental health services, and to ensure that the necessary mental health services were provided.

26. Whether due to the Jackson County Defendants' delay in informing the Union County Sheriff of Mr. Craft's imminent needs or due to the Union County Sheriff's delay in approving mental health treatment, no mental health services were provided to Mr. Craft until February 19, 2021—after Mr. Craft had remained on suicide watch at the Jail for over a month.

27. Defendant Kersten did eventually inform the Union County Sheriff, Scott Harvel, that Mr. Craft required mental health services. In an email exchange on February 11, 2021, Defendant Kersten told Sheriff Harvel that the Department of Veterans Affairs could not pay for Mr. Craft's mental health services, and that "Your two detainees [] would have to be paid for by

-5-

the Union County Sheriff's Office if they are to receive psychiatric care while in our custody. I wish I could tell you otherwise."

28. At that point, nearly 30 days after Mr. Craft went on suicide watch, Sheriff Harvel finally approved Mr. Craft for a mental health evaluation. This approval did not extend to any additional mental health services.

29. Thus, Defendant Harvel, the Sheriff of Union County, knew of Mr. Craft's mental health needs at least as early as February 11, 2021, if not sooner.

30. Defendant Harvel also retained responsibility for approving and paying the cost of any mental health services that Mr. Craft needed, at least until August 2021, when Defendant Harvel retired.

31. Following Defendant Harvel's retirement, Defendant Dale Foster took over as Sheriff of Union County in August 2021. From then on, Defendant Foster had the responsibility to approve mental health services for Robert Craft as a detainee in Union County's custody.

32. A mental health evaluation is typically the first step to providing comprehensive mental health treatment. A mental health evaluation allows the patient's mental health treatment team to understand the patient's needs and create a treatment plan that identifies what treatment interventions are needed and will be provided for the patient going forward.

33. Despite that Mr. Craft was placed on suicide watch immediately after entering the Jackson County Jail on January 12, 2021, he did not even receive a mental health evaluation—the first step to developing a comprehensive mental health treatment plan—until February 19, 2021—more than a month later. At no point did Mr. Craft receive a mental health treatment plan explaining his mental health needs, treatment goals, and the treatment that would be provided.

34. The evaluation Mr. Craft received on February 19, 2021 was completed by

-6-

Defendant Katie Miley. She identified that Mr. Craft suffered from post-traumatic stress disorder (PTSD) as well as major depressive disorder that was recurrent and severe, but did not create any meaningful treatment plan for Mr. Craft. Her only plan was to continue him on psychiatric medications, to "redirect and reorient as needed" and to "follow as needed." This, despite that Mr. Craft remained on suicide watch and in acute psychiatric distress.

35. After Mr. Craft was discharged from his first suicide watch, the Jackson County Defendants continued to receive notice of his mental health needs on several other occasions, including through contacts from Centerstone crisis counselors, Plaintiff's grievances, and Plaintiffs' additional, repeated placements on suicide watch.

36. During his incarceration at Jackson County Jail, Mr. Craft was on suicide watch at least three other times. Despite awareness that Mr. Craft was a risk to himself during these episodes, the Jail did not provide appropriate mental health interventions to treat and stabilize Mr. Craft's mental health, either because the Jackson County Defendants did not inform the Union County Sheriff (Scott Harvel until August 2021, and Dale Foster after that) of the need for further mental health interventions, or because the Union County Defendants did not approve or provide mental health interventions necessary to treat and stabilize Mr. Craft's mental health.

37. The Jackson County Jail, operated by Sheriff Burns and Lieutenant Kersten, fails to have appropriate policies and procedures in place to screen and identify individuals who need mental health services and to ensure that those services are provided. Indeed, the Jackson County Jail Standard Operating Policy manual (SOP), contains no description of any procedures to be used once an individual has been identified as needing mental health services at the Jail.

38. Despite that the Counties' contract requires Jackson County to identify individuals who have mental health needs and to communicate those needs to the Union County

Sheriff, Jackson County Jail does not have adequate mental health screening procedures to identify individuals who require enhanced mental health services.

39. Even when detainees are identified as suicidal and placed on crisis watch, Jackson County Jail fails to appropriately monitor their mental status or to provide necessary mental health interventions.

40. Neither Jackson County nor Union County keeps adequate records regarding their detainees' mental health status or treatment sufficient to inform mental health treatment providers about the patient's history, crisis placement, treatment needs, or interventions provided.

41. Moreover, neither Jackson County nor Union County has a functional system in place to ensure that patients with acute mental illness, such as Mr. Craft, are able to obtain the mental health services they need, including regular therapeutic mental health counseling.

42. The entirety of the mental health services provided by the Counties is provided through Jackson County's two vendors, Vadim Baram, Inc. (a psychiatry group for whom Katie Miley works) and Centerstone. The only services provided by these vendors are occasional medication management by Defendant Katie Miley and emergent crisis counseling by Centerstone. The services provided by those vendors are not sufficient to provide the treatment planning, therapeutic counseling, and regular monitoring required by any patient with complex mental health needs, including Mr. Craft.

43. For management of his psychiatric medications, Mr. Craft continued to see advance practice nurse, Katie Miley, every 2-7 weeks for just 5-10 minutes at a time to renew his prescriptions, but he was not given information about the medications being prescribed. Even though he was prescribed psychiatric medications, he still suffered from serious mental health

symptoms, including sleeping for up to 15 hours per day and excessive crying when he was awake. He continued to feel anxious and irritable. Defendant Miley documented these symptoms in her notes, but did not provide counseling or talk therapy to Mr. Craft to ease these symptoms, nor did she recommend to anyone that he receive additional mental health interventions such as counseling services.

44. The only counseling Mr. Craft did receive was one-off crisis counseling from Centerstone on the occasions where his mental anguish was so acute that he threatened to kill himself—and sometimes not even then. Either because Jackson County Jail did not request it or because Union County did not approve the expense, Mr. Craft was not seen by Centerstone or any other therapeutic counselor at all during his first placement on suicide watch just after his arrival at the jail, or his second crisis watch placement in April 2021. The first time Mr. Craft received *any* crisis counseling was on July 22, 2021—more than six months after first entering the jail—and after he had once again been placed on suicide watch.

45. The very first Centerstone counselor who met with Mr. Craft on July 22, 2021, identified that he suffered from PTSD related to combat and that he needed additional mental health services. She immediately reached out the Defendant Sharee Langenstein about getting those services started, but neither Defendant Langenstein nor any of the other Union or Jackson County Defendants did anything to get more mental health services to Mr. Craft.

46. Despite that Mr. Craft remained on suicide watch for another month after this contact, no weekly counseling sessions were ever provided to Mr. Craft.

47. Centerstone crisis counselors met with Mr. Craft on at least four other occasions because Mr. Craft was in acute psychiatric distress. After all or nearly all of those contacts, Centerstone counselors notified either Defendant Langenstein or Defendants Spradling (or both)

<u>that Mr. Craft required regular mental health counseling. Dfendant Spradling was notified of this need on August 8, 2021 and October 28, 2021, and Defendant Langenstein was again notified on November 24, 2021. Still, neither of these individuals or anyone else from Jackson or Union County acted to provide the badly needed care.</u>

48.     <u>Not only did Mr. Craft not receive the counseling services that he desperately needed, but he also</u> was subjected to solitary confinement for over a year. Throughout that time, he was locked in his cell for 24 hours a day most days, with no opportunities for out-of-cell activity or socialization. He had no access to library services.

49.     This extreme isolation and lack of mental health treatment have affected Mr. Craft's ability to be around other people and to interact socially and will likely continue to have long-term effects. Mr. Craft has extreme anxiety about being around others. His relationship with his wife and family has been impacted.

50.     In addition to his serious mental illness, Mr. Craft has sleep apnea which substantially limits his breathing and sleeping, making him a person with a disability within the meaning of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

51.     As treatment for his sleep apnea, Mr. Craft must use a continuous positive airway pressure (CPAP) machine at night to keep his airways open while he sleeps. The CPAP machine must be plugged into an electrical outlet to function.

52.     Because of his disability and the need to use a CPAP machine, Mr. Craft was housed for 10 months in the booking area of the Jackson County Jail. The booking area is located in a separate part of the jail, making it hard to access necessities. The booking area is designed for short-term placement, not long-term confinement. In fact, Lieutenant Spradling once told Mr. Craft that the booking cells are "just in a bad spot" down and away from everyone else, so

the staff just "forgets" about the men housed there.

53. On many occasions, Mr. Craft requested necessities such as toilet paper, towels, or the ability to take a shower, but the security staff would forget to return to the booking unit to meet his requests. In the booking area, detainees do not have showers or televisions in their cells, and rarely get time out of their cell for recreation. In the time Mr. Craft was housed in the booking area, he was only able to access the shower at most once per week.

54. During the first week of November 2021, Mr. Craft was finally moved to a cell designated for individuals with medical needs. The cell has a shower and television and allows Mr. Craft to use his CPAP machine. Mr. Craft still remains alone in his cell 24 hours per day most days, without opportunities for out-of-cell interaction or socialization.

## COUNT I
## INADEQUATE MENTAL HEALTH TREATMENT – FOURTEENTH AMENDMENT

55. All factual statements in paragraphs 1 through 54 are incorporated herein by reference.

56. This claim is brought against all Defendants.

57. Mr. Craft has serious mental health needs that all Defendants knew about and failed to address.

58. <u>This claim is brought against Defendants Scott Harvel and Dale Foster in their individual capacity, as both personally knew that Mr. Craft had serious mental health needs and that he was at serious risk of harm if his needs were not addressed. Further, Defendants Harvel and Foster, as Sheriffs of Union County, were responsible for approving and paying for any mental health services that Mr. Craft required. Despite this knowledge, both Union County Sheriffs failed to approve and pay for the mental health services that Mr. Craft required.</u>

59. <u>This Claim is also brought against Defendant Dale Foster in his official capacity</u>

as Union County Sheriff. Union County maintained a policy or practice of failing to timely approve requests for mental health services that results in a failure to provide adequate mental health treatment to people in Union County's custody.

60.     Defendant Tyler Tripp knew that Mr. Craft had serious mental health needs and was at serious risk of harm if his needs were not addressed. Defendant Tripp was responsible for notifying the Union County Sheriff so that appropriate mental health services could be approved and for notifying the Jackson County Sheriff and jail staff so that appropriate mental health services could be provided. He failed in his duty to ensure that Mr. Craft received the mental health services he required.

61.     The Jackson County Jail has a policy or custom of failing to provide appropriate mental health screening, evaluation, and treatment planning which resulted in the failure to provide Mr. Craft with adequate mental health care. Sheriff Burns and Lieutenant Kersten are both policymakers with decision-making authority at the jail, and they are therefore responsible for the Jail's lack of adequate policies and procedures related to provision of adequate mental health care.

62.     Defendants Kersten and Spradling knew from their verbal and written interactions with Plaintiff that he was suffering and needed mental health treatment that he was not receiving. Moreover, Defendants Kersten and Spradling were directly notified by Centerstone staff that Mr. Craft required additional mental health services, yet they failed to either inform the Union County Sheriff of the need for those services or failed in their responsibility to obtain those services. These Defendants failed in their duty to provide adequate care by ignoring the lack of mental health care being provided to Mr. Craft, in particular, and to other prisoners similarly situated.

63. <u>Defendant Sharee Langenstein was informed of Mr. Craft's serious mental health needs, and specifically his need for regular weekly counseling to address his symptoms of PTSD. Despite this knowledge, Defendant Langenstein failed to follow up on the recommendations given to her by Centerstone counselors, or to do anything at all to ensure that Mr. Craft's serious mental health needs were treated appropriately.</u>

64. Defendant Katie Miley was responsible for evaluating Mr. Craft's mental health needs and communicating those needs to the jail staff. Defendant Miley knew that Mr. Craft required additional mental health services beyond the sporadic medication management services that she provided to Plaintiff, yet failed to inform Jackson County Jail staff or Union County Jail staff of this necessity and failed to assist in obtaining those services for Plaintiff.

65. Defendants' failure to provide adequate mental health treatment has caused exacerbation of mental health symptoms and physical and emotional harm and continues to subject Mr. Craft to the risk of further exacerbation of symptoms, prolonged pain and suffering, and the risk of serious injuries from possible self-harm.

66. The failure to provide mental health treatment, including a timely initial mental health evaluation, a treatment plan and implementation of the treatment plan, regular counseling services, and appropriate treatment and interventions while on suicide watch, all constitute violations of the Fourteenth Amendment. *See e.g. Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018).

**COUNT II**
**CONDITIONS OF CONFINEMENT – FOURTEENTH AMENDMENT**

67. All factual statements in paragraphs 1 through 54 are incorporated herein by reference.

68. This claim is brought against the Jackson County Sheriff, Robert Burns, as well as

Defendants Kersten and Spradling.

69. The Jackson County Defendants subjected Mr. Craft to prolonged isolation for over a year, without appropriate mental health treatment, in violation of his rights under the Fourteenth Amendment.

70. The Defendants acted knowing that Plaintiff was confined in isolating conditions and that those conditions posed a risk of harm to Plaintiff, especially given his serious mental health needs. The Defendants acted with deliberate indifference to those risks.

71. As a result of Defendants' actions or inactions, the Plaintiff suffered injuries including exacerbation of his mental health symptoms, physical harm and ongoing risk of physical harm from lack of exercise and self-harm caused by his mental health conditions, strained relationships with his family.

## COUNT III
## AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT

72. All factual statements in paragraphs 1 through 54 are incorporated herein by reference.

73. This claim is brought against Jackson County Sheriff, Robert Burns, as well as Defendants Kersten and Spradling.

74. This claim is brought under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act against the Sheriff of the Jackson County Jail in his official capacity.

75. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

76. As a county jail, the Jackson County Jail is a public entity within the meaning of Title II of the ADA.

77. Section 504 of the Rehabilitation Act provides that "[]no otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794.

78. Jackson County Jail is subject to the Rehabilitation Act as a public entity that receives federal funding. 29 U.S.C. § 794(b).

79. Plaintiff is a qualified person with a disability under the ADA and Rehabilitation Act because he is substantially limited in the major life activities of breathing and sleeping due to sleep apnea.

80. Defendants were aware that Mr. Craft has sleep apnea and required the use of a CPAP machine at night. They also were aware that housing Mr. Craft in a cell in the booking area due to his disability would deny him access to programs, services, and activities available in other areas of the jail, including regular access to showers and the ability to watch television.

81. Defendant violated Title II of the ADA and Section 504 of the Rehabilitation Act by depriving Mr. Craft of access to programs otherwise available to pretrial detainees because of his disability. *See* 28 CFR § 35.152.

82. As a result of Defendant's actions or inactions, Plaintiff suffered injuries including the loss of programming and privileges, as well as physical, mental and emotional injuries.

PRAYER FOR RELIEF

83. Plaintiff requests an order declaring that the defendants have acted in violation of

the United States Constitution.

84. Plaintiff requests damages for physical injury and past and present and future mental pain and suffering.

RESPECTFULLY SUBMITTED,

/s/ *Samantha R. Reed*
Harold C. Hirshman
Samantha R. Reed
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
Telephone: (312) 876-8000
Facsimile:  (312) 876-7934
harold.hirshman@dentons.com
samantha@equipforequality.org

CERTIFICATION

      Under Federal Rule of Civil Procedure 11, by signing below, Robert Craft certifies that to the best of his knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increases the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requires of Rule 11.

      /s/ *Robert L. Craft*
      Robert Craft, Plaintiff
      November 7 , 2022

## CERTIFICATE OF SERVICE

      It is hereby certified that on November 7, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel for all parties.

                                                  /s/ Samantha R. Reed
                                                  One of the Attorneys for Plaintiff