IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT CRAFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ROBERT BURNS (JACKSON CNTY. SHERIFF), | ) |
| DALE FOSTER (UNION CNTY. SHERIFF), | ) Case No. 22-cv-119-DWD |
| SCOTT HARVEL (FORMER UNION CNTY. SHERIFF), | ) |
| LEE KERSTEN, | ) |
| KYLE SPRADLING, | ) |
| SHAREE LANGENSTEIN, | ) |
| TYLER TRIPP, | ) |
| KATIE MILEY, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on Motions to Dismiss filed by Defendants Sharee Langenstein (Doc. 76) and Tyler Tripp (Doc. 80). The underlying lawsuit contains claims about Plaintiff Robert Craft's confinement at the Jackson County Jail, brought under 42 U.S.C. § 1983, and the Americans with Disabilities Act, 42 U.S.C. §12001, et seq.. (Doc. 57). The parties participated in settlement efforts for the better part of a year in this case, which delayed a ruling on the motions to dismiss, but recent settlement efforts in this case have failed, and the parties now intend to recommence merits discovery. The motions to dismiss are denied at this juncture for reasons explained herein.

## BACKGROUND

Claims against Defendants Sharee Langenstein and Tyler Tripp were added to this lawsuit via the Amended Complaint. (Doc. 57). Plaintiff alleges that Langenstein was an assistant state's attorney for Jackson County and Tripp was an assistant state's attorney for Union County. (Doc. 57 at ¶¶ 9, 12). The underlying complaint concerns conditions that Plaintiff encountered while detained at the Jackson County Jail, on behalf of Union County (which does not have a jail facility). (Doc. 57 at ¶ 20). Plaintiff alleges that at the hearing that led to his detention, the presiding judge instructed that the public defender and Defendant Tripp should ensure that the Jackson County Jail ("the Jail") would provide Plaintiff with needed mental health services. (Doc. 57 at ¶ 18). Plaintiff further alleges that Defendant Tripp was aware of his mental health needs, and that he argued at the bond hearing that Plaintiff's mental instability was a reason to keep him detained. (*Id.* at ¶ 23). Given his representations to the state court, Plaintiff argues that Tripp had an obligation to inform the sheriffs of Jackson and Union counties that Plaintiff needed mental health care, and to ensure that care was received. (*Id.* at ¶ 23).

Despite assurances that Plaintiff could receive mental health services at the Jail, he contends that he never received adequate mental health care and that his mental health suffered. (Doc. 57 at ¶ 33). Without mental health care, Plaintiff alleges he was on suicide watch at least three times. (*Id.* at ¶ 36). The only mental health services Plaintiff received were brief medication management appointments, and emergency crisis counseling. (*Id.* at ¶¶ 42-44). During these limited interactions, a counselor determined that Plaintiff suffered from PTSD and needed additional care, so she contacted Defendant Sharee

Langenstein about the needed care in July of 2021. Despite the request for additional services from the counselor, Plaintiff alleges Langenstein did nothing to secure additional services. (*Id.* at 45). Langenstein was notified at least one more time in November of 2021 that services were still needed, but nothing was accomplished. (*Id.* at 47).

Plaintiff named Defendants Tripp and Langenstein in Count 1 of his amended complaint, which alleges inadequate mental health treatment under the Fourteenth Amendment. (Doc. 57 at ¶¶ 60, 63).

## DISCUSSION

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to decide the adequacy of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, the allegations must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in [plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson*, 910 F.2d at 1520. A complaint "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sanders v. Melvin*, 25 F.4th 475, 483 (7th Cir. 2022) (internal quotations and citations omitted). When reviewing a Rule 12(b)(6) motion to dismiss, the court is generally limited to the allegations within the four corners of the complaint, along with any exhibits attached to the complaint and any documents attached to the motion that are referenced in and central to plaintiff's claims. *See, e.g.*, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

A pretrial detainee's Fourteenth Amendment right to medical care is violated if: (1) there was an objectively serious medical need; (2) the defendant made a volitional act with regard to the plaintiff's medical need; (3) that act was objectively unreasonable under the circumstances in terms of treating or assessing the patient's serious medical need; and (4) the defendant "acted purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm. *Miranda v. Cty. Of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2019).

Prosecutors have absolute immunity from suits for monetary damages under § 1983 for conduct that is "intimately associated with the judicial phase of the criminal

process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). A prosecutor is shielded by absolute immunity when he acts "as an advocate for the State" but not when his acts are investigative and unrelated to the preparation and initiation of judicial proceedings. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Absolute immunity shields prosecutors even if they act "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986). A functional inquiry is used to determine the nature of a prosecutor's actions. Immunity covers more than just courtroom activity, and can also include things like evaluating evidence before presenting it to a grand jury or at trial, or making an effort to secure witnesses. *Bianchi v. McQueen*, 818 F.3d 309, 317 (7th Cir. 2016).

Additionally, prosecutors acting in investigative capacity may claim qualified immunity, which covers conduct that does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *See e.g.*, *Bianchi v. McQueen*, 818 F.3d 309, 316 (7th Cir. 2016). The qualified-immunity doctrine holds that "government officials are not subject to damages liability for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley*, 509 U.S. at 268 (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). A court may

address either question first. *See e.g.*, *Doe v. Village of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015). Courts should resolve immunity at the earliest possible time, but dismissal on qualified immunity grounds may be inappropriate in many cases at the 12(b)(6) stage. *Doe*, 782 F.3d at 915-16.

The distinction between core functions of the prosecutorial duty and administrative functions is nuanced for the purposes of absolute immunity. For example, in *Olson v. Champaign County, Ill.*, the Seventh Circuit found that a prosecutor had absolute immunity for signing an information to initiate a suit, but he did not have absolute immunity when he went a step further in the same document and attested to the facts contained in the information in court because attesting to the facts is distinct under Illinois law and is a role that can be performed by someone else like a police officer. 784 F.3d 1093, 1103 (7th Cir. 2015); *see also*, *Villars v. Kubiatowski*, 45 F.Supp.3d 791, 809-11 (N.D. Ill. May 5, 2014) (finding that a prosecutor did not have absolute immunity for failing to regularly report on a material witness's detention status, because such reporting was administrative in nature, not prosecutorial). By contrast, the Supreme Court held in *Van De Kamp v. Goldstein*, 555 U.S. 335, 344 (2009), that even supervisory prosecutors who allegedly failed to create an internal office system to share and manage jail informant information, and who thus failed to disclose information about an informant to defense counsel in a criminal case, were not acting administratively. They found that ultimately the particular task at hand, compiling and sharing information about informants, was intimately associated with the judicial phase of the criminal process, even if some aspects of it could be viewed as generic and administrative.

Defendant Tripp argues that he had no general duty, and no authority under Illinois law, to arrange for the provision of mental health care for Plaintiff at the Jail. (Doc. 81). He further contends he is eligible for absolute prosecutorial immunity because the issues identified by Plaintiff took part at a hearing in a criminal matter. Alternatively, he contends he is at least eligible for qualified immunity because it was not clearly established under the law that a prosecutor would believe he had a constitutional obligation to ensure mental health care for a jail detainee.

Plaintiff counters that Tripp is not entitled to absolute prosecutorial immunity because at the hearing he acknowledged Plaintiff's mental health needs, and the judge tasked Tripp and the public defender with ensuring Plaintiff received mental health care while in the Jail. (Doc. 104). He argues that by tasking Tripp with ensuring Plaintiff's access to mental health care, the state court judge converted Tripp's function to administrative rather than prosecutorial. Plaintiff adds that Illinois law recognizes voluntary undertaking liability, which was invoked when Tripp accepted a duty to ensure mental health services. Finally, Plaintiff contends that he has established both that a constitutional right was violated, and that the right was clearly established, so qualified immunity does not apply. (Doc. 104 at 3).

While the Court appreciates the importance of determining the issues of absolute and qualified immunity as early as possible in the litigation, here the disagreement relies at least in part on the development of facts surrounding the contested issue. Specifically, the parties are in direct contest about the implication of statements made on the record at a state court detention hearing, but the best evidence the Court has to assess these

statements and their legal implication is Plaintiff's approximate recitation of what transpired at the hearing set forth in the amended complaint, as opposed to a transcript, or any other kind of evidence. Plaintiff mentions statements about his mental health that Tripp made when arguing to the judge about the appropriateness of detention as opposed to bond. While statements about the appropriateness of detention are within the heart of Tripp's role as a prosecutor and would be entitled to absolute prosecutorial immunity,[1] Plaintiff also relies on either a directive from the judge to Tripp or a conversation between Tripp, opposing counsel, and the presiding judge about ensuring mental health services. It is hard to tell from the summarization in the amended complaint and in the present motion briefing, if these interactions should be considered central to the prosecutorial function, or if they gave rise to some unique administrative or non-prosecutorial context. On the record available, the Court is unable to definitively determine if Tripp acted in a prosecutorial or administrative capacity, so at this early juncture it cannot grant him dismissal on the basis of absolute immunity.

Tripp argues that even if he is not entitled to absolute immunity, he is at least entitled to qualified immunity. He argues that there is no general duty of rescue and that

---

[1] *See e.g., Neal v. U.S.*, 2014 WL 172545 at * 4 (E.D. Cal. Jan. 15, 2014) (arguments or evidence presented during a bond or detention hearing is intimately associated with the judicial process and is protected by absolute immunity); *Wilson v. City of Chanute*, 43 F.Supp.2d 1202 (D. Kan., Feb. 23, 1999) (county prosecutor's actions in securing a release on bond for a detainee hours after the initial appearance in court on the case were prosecutorial in nature, even if she acted in part in response to queries from the police department where he was detained and performed administrative functions to complete paperwork to apply for the release on bond, because ultimately a release on bond is central to her prosecutorial function). *But see, Olson*, 784 F.3d at 1103 (finding that some of a prosecutor's in court actions at an initial appearance were core to the prosecutorial function, but signing a portion of the charging document that contained factual probable cause attestations was not core to the prosecutorial function because another party (such as a detective or police officer) could serve that function).

under Illinois law sheriffs are tasked with maintaining jails and serving the needs of the jail population. Both propositions are true, but they do not get around the more specific rights that are the focus of Plaintiff's lawsuit. Plaintiff relies upon the strong premise that the Fourteenth Amendment guarantees pretrial detainees access to needed medical and mental health care. The care provided must be assessed only in terms of objective reasonableness, rather than under the Eighth Amendment's more lax subjective reasonableness standard. This right is clearly established and has been emphasized multiple times by the Seventh Circuit in recent years. *See e.g.*, *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020) (pretrial detainees' medical-care claims are governed by an objective unreasonableness inquiry); *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018) (pretrial detainees cannot be punished at all, so their medical care must be assessed under an objective reasonableness standard, rather than the subjective standards used under the Eighth Amendment). The context here is admittedly a bit unique because Plaintiff seeks to hold a prosecutor (rather than a jail official) liable for his need for care while detained, but the basic premise that a pretrial detainee is entitled to care is not debatable or new. The Court finds that at this early juncture in the case, it is not appropriate to find qualified immunity on Tripp's behalf.

Defendant Langenstein is also a prosecutor, but she acknowledges that she had no role in Plaintiff's criminal prosecution and thus would not qualify for absolute immunity. (Doc. 76). Langenstein argues that she had no legal obligation or authority to assist in procuring mental health care at the jail, and thus she had no obligation under the constitution to assist in this scenario. (Doc. 76). She also argues that even if Plaintiff

alleged a constitutional violation, any duty on her behalf was not clearly established at the time of the underlying actions that give rise to this case. Plaintiff counters that Langenstein is not entitled to immunity because his right to care was clearly established, and his rights were clearly violated by the lack of care. (Doc. 82)[2].

As with Defendant Tripp, the Court finds that Langenstein is not entitled to qualified immunity at this juncture because a pretrial detainee's right to adequate mental health care was clearly established, and Plaintiff has plainly alleged that Langenstein was notified of his need for care but entirely failed to act. While Langenstein's ultimate level of personal involvement, and her ability to take meaningful action will be important to the overall analysis of this case, the Court will accept Plaintiff's allegations at this early juncture and read them broadly in his favor to suggest that the two notifications to Langenstein about his need for care may have generated some obligation on her behalf. Langenstein argues that she lacked authority or a responsibility to ensure adequate care at the Jail, but it seems apparent that at least the medical contractor who contacted her believed that she was a necessary or appropriate contact to receive assistance in coordinating care. If Langenstein did not actually possess any appropriate authority to act, it is not unreasonable to think that perhaps she should have redirected the contractor's queries to someone else rather than take no action at all. For now, the Court will decline to find qualified immunity on Langenstein's behalf.

---

[2] In support of the response, Plaintiff submitted two visit notes from the counseling contractor that allegedly contacted Defendant Langenstein about Plaintiff's need for care. (Doc. 82-1). The court did not weigh these notes in consideration of the motion to dismiss because such a ruling is generally limited to the four corners of the complaint.

In sum, both Motions to Dismiss (Docs. 76, 80) will be denied. This ruling does not foreclose later findings on absolute or qualified immunity, it is simply a determination that at this early point in the litigation neither form of immunity is sufficiently established to warrant a final dismissal of claims.

### DISPOSITION

Defendants Tripp and Langenstein's Motions to Dismiss (Docs. 76, 80) are **DENIED**. The parties should proceed with merits discovery in accordance with the earlier scheduling order. (Doc. 101).

**IT IS SO ORDERED.**

Dated: March 26, 2024

/s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge